UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| CHRISTINA F. MAGEE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL NO. 1:18cv257 |
| | ) |
| NANCY A. BERRYHILL, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

This matter is before the court for judicial review of a final decision of the defendant Commissioner of Social Security Administration denying Plaintiff's application for Disability Insurance Benefits (DIB), as provided for in the Social Security Act. Section 205(g) of the Act provides, inter alia, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based. The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing." It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. §405(g).

The law provides that an applicant for DIB must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of no less than 12 months. . . ." 42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A). A physical or mental impairment is "an

impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3). It is not enough for a plaintiff to establish that an impairment exists. It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity. *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979). It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff. *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings." *Garfield v. Schweiker*, 732 F.2d 605, 607 (7th Cir. 1984) citing *Whitney v. Schweiker*, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g). "Substantial evidence is defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see Allen v. Weinberger*, 552 F.2d 781, 784 (7th Cir. 1977). "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law." *Garfield*, *supra* at 607; *see also Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after consideration of the entire record, the Administrative Law Judge ("ALJ") made the following findings:

1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2014.

2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of December 15, 2014, through her date last insured of December 31, 2014 (20 CFR 404.1571 *et seq*.).

3. Through the date last insured, the claimant had the following severe impairments: carpal tunnel syndrome (CTS) of the left wrist; osteoarthritis of the knees; degenerative disease in the lumbar spine with mild facet arthrosis at L5-S1 and severe neural canal narrowing at two levels; longstanding umbilical hernia (since 1995)/rectus diastasis of the lower abdomen; and obesity (Exhibits 1F to 21F)(20 CFR 404.1520(c)).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except as reduced by the following: Additional limitations include the option to sit/stand with a change of position after 25 minutes as needed, while remaining on task. The claimant is also limited to occasional stooping, crouching, balancing, and climbing ramps and stairs, but not climbing of ladders, ropes or scaffolds. Finally, the individual is limited to frequent handling of the bilateral upper extremities, frequent fingering of the left upper extremity, and frequent reaching, pushing, and pulling with the right upper extremity.

6. Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on March 20, 1970, and was 44 years old, which is defined as a younger individual age 18-49, on the date last insured (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that have existed in

significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)).

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from December 15, 2014, the alleged onset date, through December 31, 2014, the date last insured (20 CFR 404.1520(g)).

(Tr. 17- 26).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to disability insurance benefits. The ALJ's decision became the final agency decision when the Appeals Council denied review. This appeal followed.

Plaintiff filed her opening brief on February 4, 2019. On March 18, 2019 the defendant filed a memorandum in support of the Commissioner's decision. Plaintiff has declined to file a reply. Upon full review of the record in this cause, this court is of the view that the ALJ's decision should be affirmed.

A five step test has been established to determine whether a claimant is disabled. *See Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-91 (1987). The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order: (1) Is the claimant presently unemployed? (2) Is the claimant's impairment "severe"? (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162

n.2 (7th Cir. 1985); accord *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984). From the nature of the ALJ's decision to deny benefits, it is clear that Step 5 was the determinative inquiry.

In support of remand, Plaintiff first argues that the ALJ failed to properly account for Plaintiff's limitations in the RFC. The RFC is the most an individual can do despite her limitations. 20 C.F.R. § 404.1545. The RFC assessment is an administrative finding, not a medical opinion. *Marner v. Berryhill*, No. 1:17-CV-113-WCL, 2018 WL 360332, at *5 (N.D. Ind. Jan. 11, 2018); Social Security Ruling (SSR) 96-8p, 1996 WL 374184, at *2 (S.S.A.). Judicial review of the ALJ's decision rests on whether substantial evidence supports the RFC finding, which takes all relevant evidence into account, including objective medical evidence, course of treatment, physicians' opinions and observations, as well as Plaintiff's own statements about her limitations. 20 C.F.R. § 404.1545. When making a decision, the ALJ must build a logical bridge from the evidence to her conclusion. *Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005). In doing so, the ALJ must "connect the dots" between the claimant's impairments—as supported by substantial evidence in the record—and the RFC finding. *Young v. Barnhart*, 362 F.3d 995, 1002-03 (7th Cir. 2004).

In the present case, the ALJ found that through the date last insured (December 31, 2014), Plaintiff had the RFC to perform light work, as defined in 20 C.F.R. § 404.1567(b), except that she was further limited as follows:

- She required a sit/stand option, with a change of position after 25 minutes as needed, while remaining on task;

- She could do occasional stooping, crouching, balancing, and climbing ramps and stairs;

- She could do no climbing of ladders, ropes, or scaffolds;

> • She could do frequent handling of the bilateral upper extremities;
>
> • She could do frequent fingering of the left upper extremity; and
>
> • She could do frequent reaching, pushing, and pulling with the right upper extremity.

Tr. 19-20.

Plaintiff argues that the ALJ's assessed sit/stand limitation lacks specificity in terms of the frequency of Plaintiff's need to alternate between sitting and standing. The parties agree that an ALJ must specify the frequency with which such a positional change should occur or that the change is at the claimant's option. *Arnett v. Astrue*, 676 F.3d 586, 593 (7th Cir. 2012); *see also* SSR 96-9p, 1996 WL 374185, at *7 (S.S.A.).

In *Arnett*, the "RFC provide[d] that [the claimant] must be able to alternate between sitting and standing 'throughout the workday.'" 676 F.3d at 594. The *Arnett* Court found that the RFC "did not specify a particular frequency, and does not require that [the claimant] be able to choose to sit or stand when she feels it is necessary." *Id*. Thus, the issue became one of control (i.e., who had control over when to initiate a position change). Also, the RFC in *Arnett* required alternate standing and sitting. *Id.* The RFC in this case, by contrast, does not implicate such restrictions; rather, it implies broad flexibility in changing positions. *See Manley v. Barnhart*, 154 F. App'x 532, 537 (7th Cir. 2005) (illustrating the subtlety in the difference between "alternate at will" and "alternate throughout the day").

The ALJ in the present case found Plaintiff would require the "option to sit/stand with a change of position after 25 minutes as needed, while remaining on task" (Tr. 19-20). This limitation plainly specifies the frequency with which Plaintiff could change positions between

6

sitting and standing – if needed. Yet in Plaintiff's view, this language is "hopelessly ambiguous about who has control of position changes"

This Court has previously rejected such an argument on similar facts. In *Best v. Berryhill*., the ALJ noted that the vocational expert had testified that an individual who required "a sit/stand option (twenty minutes minimum)" could perform work. No. 1:17-cv-23-TLS, 2017 WL 6523929, at *3 (N.D. Ind. Dec. 21, 2017). This Court found that the language not only "specifically indicate[d] that the sit/stand option was to be at-will," but also attached "a particular frequency . . . to further clarify what was intended by at-will." *Id.* That is, rather than rendering the ALJ's decision internally inconsistent, language indicating that the option was both "at will" and at certain intervals was clearer than language indicating only one or the other.

In the present case, the RFC contains a sit/stand option with both an "as needed" provision and the particular time frame/intervals for changing positions (Tr. 19-20). As in *Best*, this Court finds herein that the limitation in the RFC regarding the sit/stand option is plainly clear and sufficient. Remand is not warranted on this issue.

Plaintiff next argues that the ALJ did not adequately account for all of her severe and non-severe impairments in the RFC . The only specific limitation Plaintiff challenges, however, is the finding that Plaintiff could occasionally stoop, crawl, and balance. This finding, Plaintiff argues, "defies logic" in light of Plaintiff's diagnoses of morbid obesity, knee osteoarthritis, lumbar degenerative disk disease with neural canal narrowing, and a hernia. Although Plaintiff points to various diagnoses in the record, she does not cite any evidence beyond her own lay intuition that these impairments result in greater limitations than the ALJ found.

The determinative issue in a disability adjudication is the functional impact of a condition;

7

a mere diagnosis or examination note does not establish the severity of an impairment. *Johnson v. Colvin*, No. 2:13-CV-138-PRC, 2014 WL 4722529, at *4 (N.D. Ind. Sept. 22, 2014) ("The mere diagnosis of an impairment does not establish that the impairment affects the individual's ability to perform basic work activities.") (citations omitted). In assessing Plaintiff's RFC, the ALJ considered her diagnosed impairments and the objective and subjective evidence related to the impairments.

With regard to the postural limitations at issue, the ALJ discussed substantial evidence supporting her findings (Tr. 20-24). Record evidence pre-dating Plaintiff's alleged disability onset (*i.e.*, before December 15, 2014) show complaints of joint pain, swelling, decreased range of motion, and diagnoses of ventral hernia and morbid obesity (Tr. 21). However, as the ALJ noted, clinical findings on exam reflected intact neurological and musculoskeletal findings, including a normal gait and station (Tr. 21, 253-54, 257, 259, 268). An October 2010 abdominal CT scan noted a large ventral hernia and degenerative changes of the spine with no acute abnormality of osseous structures (Tr. 21, 326-27). A February 2011 cervical spine x-ray noted degenerative changes, without fracture or malalignment (Tr. 21, 393-94). March 2011 lumbar spine x-rays noted degenerative changes not further specified or defined, without evidence of fracture, malalignment, or soft tissue swelling (Tr. 21, 380). Clinical exam findings in February and March 2011 noted observations of flank/right shoulder pain along with lumbar paraspinal/neck muscle tenderness and variable moderate distress/non-toxic appearance, but other than for some diffuse tenderness to palpation and positive Tinel's signs, clinical findings were unremarkable (Tr. 21, 383-92).

February 2013 records include clinical findings of normal neck range of motion without

stiffness and chronic pain from arthritis with only minimal to very tender response to palpation of the neck/paraspinal neck muscles (Tr. 22, 297-301). Plaintiff had some midline spinal tenderness on the left with positive straight leg raising on the left occurring in the context of full upper/lower muscle strength, normal muscle tone/coordination, and no neurological deficits (Tr. 22, 297-301). There were no other abdominal, neurological or other musculoskeletal deficits and no related edema or tenderness (Tr. 22). Lumbar spine x-rays noted vertebral alignment within normal limits, no significant loss of vertebral height, multiple gallstones, and lumbar disc spaces for mild diffuse intervertebral disc height loss (Tr. 22, 301).

Clinical findings for musculoskeletal and neurological functioning were unremarkable for deficits in August 2013 (Tr. 22, 305-06). An August 2013 abdominal CT scan noted diffuse lumbar spondylosis with severe neural canal narrowing on the right at L4-L5 and on the left at L5-S1, but clinical findings on exam noted at most mild distress (Tr. 22, 349, 353-54, 373-76). In July 2014, Plaintiff had tenderness to palpation of the lumbar spine, but otherwise, clinical findings noted no acute distress or only mild distress and no musculoskeletal and neurological deficits (Tr. 22, 362-63). The ALJ concluded that the evidence pre-dating Plaintiff's alleged disability onset date did not reasonably support or suggest greater limitations in functioning than as assigned in the RFC findings (Tr. 23).

Likewise, evidence post-dating Plaintiff's date last insured (*i.e.*, after December 31, 2014) did not support greater limitations. Plaintiff presented to the emergency room in April 2015 with complaints of back pain without radiation following a report of moving boxes (Tr. 23, 402). As the ALJ noted, the examination results were essentially unremarkable (Tr. 23, 403). During a new patient exam in May 2015, Plaintiff complained of left carpal tunnel syndrome and a sore wrist,

but clinical exam showed that Plaintiff's sensation was intact and she had no neurological deficits (Tr. 23, 412-15). She also alleged generalized arthritis of the shoulders and knees absent use of any related medication or evidence of warmth, tenderness, or swelling in any of the body joints with range of motion only slightly painful (Tr. 23, 412-16). She had no musculoskeletal and neurological deficits on examination (Tr. 23, 415). A September 2015 EMG/nerve conduction study supported moderate-to-severe left carpal tunnel syndrome with all other upper extremity findings normal to within normal limits (Tr. 23-24, 595-98). An October 2015 right knee x-ray supported moderate degenerative changes of the knee (Tr. 24, 576).

The ALJ also considered the opinions of the State agency medical consultants who reviewed Plaintiff's records (Tr. 24). As the ALJ noted, however, the consultants made no specific determination on any issue of conditions, symptoms, or functioning for the period prior to Plaintiff's date last insured, December 31, 2014 (Tr. 24, 75-80, 82-88).

In light of this evidence, the ALJ reasonably concluded that Plaintiff could occasionally stoop, crawl, and balance during the period from her alleged onset date (December 15, 2014) through her date last insured (December 31, 2014) (Tr. 20). The ALJ's finding represents a careful evaluation of the evidence regarding Plaintiff's impairments. As the ALJ stated, "in the context of sufficient evidence, intermittent complaints, minimal need for sustained treatment, relatively quick symptom improvement with conservative treatment and minimal non-sustained clinical findings of deficit, the overall evidence does not reasonably support total disability, nor greater functional limitation" than determined in the RFC (Tr. 24). The ALJ limited Plaintiff's postural maneuvers, while precluding others (Tr. 24). As the ALJ specifically noted, the RFC limitations "reasonably accommodate[] the combination of obesity with clinical findings

involving the right knee and lumbar spine along with osteoarthritis," as well as the diagnosed hernia, carpal tunnel syndrome, and shoulder pain complaints (Tr. 24).

This court's job is not to weigh the evidence but to determine if substantial evidence supports the ALJ's decision. In this case, there is clear evidence supporting the ALJ's decision. Notably, Plaintiff has not directed the court to any evidence contradicting the ALJ's findings. In fact, Plaintiff failed to file a reply, apparently conceding that the evidence, as summarized by the Commissioner and detailed in the ALJ's decision, supports the decision. Accordingly, there is no basis for remand and the ALJ's decision must be affirmed.

## Conclusion

On the basis of the foregoing, the decision of the ALJ is hereby AFFIRMED.

Entered: May 15, 2019.

                                                          s/ William C. Lee
                                                          William C. Lee, Judge
                                                          United States District Court